J-E02009-15

2015 PA Super 255

| IN RE: ADOPTION OF: M.R.D. AND T.M.D., MINOR CHILDREN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: M.C., NATURAL FATHER | No. 1728 MDA 2013 |

Appeal from the Decree dated August 19, 2013
In the Court of Common Pleas of Lycoming County
Orphans' Court at No: 6365

BEFORE: GANTMAN, P.J., BENDER, P.J.E., PANELLA, DONOHUE, SHOGAN, ALLEN, LAZARUS, MUNDY, and STABILE, JJ.

DISSENTING OPINION BY STABILE, J.:          **FILED DECEMBER 08, 2015**

I respectfully dissent from the learned Majority's decision to affirm the involuntary termination of Father's parental rights to Children and to allow Maternal Grandfather to adopt Children with his daughter (Mother). I do so for two principal reasons. First, Mother, who does not intend to relinquish her parental rights, may not propose her father as an adoptive resource in order to involuntarily terminate Father's parental rights under Section 2512 of the Adoption Act (Act).[1] The Majority's reliance on *In re Adoption of J.M.*, 991 A.2d 321 (Pa. Super. 2010), is misplaced to the extent the Majority cites it for the proposition that a maternal grandfather may adopt and co-parent with his daughter her biological children. Alternatively, to the

---

[1] Act of October 15, 1985, P.L. 934, **as amended**, 23 Pa.C.S. §§ 2101-2938.

extent *J.M.* may be read to allow such an adoption, I believe *J.M.* was wrongly decided. Second, the proposed adoption of Children by Maternal Grandfather, while Mother retains parental rights, would not create a new parent-child relationship or a new family unit because, among other things, Maternal Grandfather is **married** to, and **resides** in a separate household with Maternal Grandmother. Accordingly, I would reverse the trial court's order terminating Father's parental rights pursuant to Section 2511(a)(1) and (b) of the Act.

Mother initiated these proceedings by the filing of an involuntary petition to terminate Father's parental rights to Children under Section 2512 of the Act. Mother wishes to retain her parental rights to Children. To do so, Mother first must present a petition that on its face identifies a qualified person willing and able to adopt the Children.[2] *E.M.I.*, 57 A.3d at 1287. An involuntary petition to terminate a natural parent's rights when filed by one parent against the other is only cognizable if it is accompanied by a prospective stepparent's intention to adopt the child. *In Re Adoption of L.J.B.*, 18 A.3d 1098 (Pa. 2011) (plurality). As our Supreme Court explained:

> Once a natural parent's rights are terminated, the concomitant adoption fosters a new parent-child relationship. Such a rule is sound because termination of the natural parent's rights prior to adoption and allowance of stepparent adoption is for purposes of

---

[2] A mere averment of a contemplated adoption, however, could "be sufficient to obtain a hearing on the termination petition." *In Re E.M.I.*, 57 A.3d 1278, 1287 (Pa. Super. 2012).

> protecting the integrity and stability of the new family unit. . . . Thus, where no new parent-child relationship is contemplated, the involuntary termination of parent rights is not permitted under the Adoption Act.

*Id.* at 1108. (internal quotation marks and citation omitted).[3]  Therefore, involuntary termination is not permitted when no adoption or "new parent-child relationship" is contemplated, because the sole purpose of termination is to further adoption and establish a "new family unit."  *L.J.B.*, 18 A.3d at 1108 (noting "where a prospective stepparent, due to separation or pending divorce with the other natural parent, will no longer complete the family unit, the termination of a natural parent's rights due to abandonment must be vacated").

For an adoption to proceed under the Act, the parents of a child must give consent to the adoption and relinquish their rights to the child.  23 Pa. C.S.A. § 2711.  A limited exception to this general rule exists in Section 2903 of Act when one parent wishes to retain parental rights.  Section 2903 provides "[w]henever a parent consents to the adoption of his child by his **spouse**, **the *parent-child relationship between him and his child shall remain*** whether or not he is one of the petitioners in the adoption proceeding."  23 Pa.C.S. § 2903 (emphasis added).  We have construed this provision to apply "only to '**stepparent**' **situations**."  *In re Adoption of J.D.S.*, 763 A.2d 867, 871 (Pa. Super. 2000) (emphasis added).  This

---

[3]  It has long been held that the Act is not intended to be used as a sword against a parent.  This point of law originated in a case decided by our Supreme Court in 1977.  *See In re B.E.*, 377 A.2d 153, 156 (Pa. 1977).

provision does not apply to individuals whose relationship with the petitioning parent is not a legally recognized marriage.[4] ***Id.*** (concluding that stepfather who has separated from mother in contemplation of divorce and no longer resided with her failed to meet the statutory prerequisites for termination of father's parental rights); ***see also L.J.B.***, 18 A.3d at 1108 (noting "where a prospective stepparent, due to separation or pending divorce with the other natural parent, will no longer complete the family unit, the termination of a natural parent's rights due to abandonment must be vacated"). Thus, for a non-spouse to adopt children under Section 2711 of the Act, the Children's natural parents must relinquish their parental rights, either voluntarily or involuntarily. ***See R.B.F.***, 803 A.2d at 1199. Maternal Grandfather here is a non-spouse to Mother. A facial review of Mother's involuntary petition therefore, fails to establish a qualified adoptive resource.

The Majority acknowledges that a termination petition first must meet threshold requirements under the Act before a court may proceed to a Section 2511(a) and (b) termination analysis. ***See also E.M.I.***, ***supra***. Despite this recognition, the Majority proceeds to review first whether Father's rights were properly terminated by the trial court under Section 2511(a) and (b) of the Act before addressing the question of whether

_____

[4] Except for when cause may properly be shown under Section 2901 of the Act. ***See In re Adoption of R.B.F.***, 803 A.2d 1195 (Pa. 2002). (same sex partners permitted to show cause why they should not have to comply with relinquishment of parental rights by one partner if the purpose and necessity of the Act was otherwise satisfied).

Mother's petition at the outset sets forth the necessary grounds for adoption as permitted under the Act. As stated, Mother's proposed adoption of Children by her father does not meet the spousal exception for retention of parental rights under Section 2903 of the Act. Before proceeding to an analysis of whether Father's parental rights may be terminated under Section 2511(a) and (b), it was incumbent upon the trial court and this Court first to consider whether Mother's father, Maternal Grandfather, is a qualified adoptive resource for Children. Because Mother's father cannot qualify as Mother's spouse, Mother had the burden of demonstrating "cause" under Section 2901 of the Act as to why her father should be permitted to stand in the shoes of a spouse as contemplated under Section 2903. It is with the preservation of these thresholds questions and fundamental purposes underlying the Act where I part paths with the Majority. To the extent the trial court concluded Mother established "cause" to permit adoption of her Children by her father, I conclude it abused its discretion and erred as a matter of law.[5]

The Majority takes as a given that this Court's decision in **J.M.** established a rule whereby a non-spouse adoptive nominee can be a child's maternal grandfather to co-parent with the maternal grandfather's

---

[5] Although the statutory reference for "good cause" was not cited by the trial court, Section 2901 of the Act provides, in part, "[u]nless the court for cause shown determines otherwise, no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated . . . ." **See** 23 Pa.C.S. § 2901.

daughter.[6]  Maj. Op. at p.16.  As stated, I believe the Majority's reliance upon *J.M.* is misplaced, or alternatively, *J.M.* was wrongly decided.

The trial court in *J.M.* found that adoption by the maternal grandfather would not create a new family unit given that mother and maternal grandfather maintained separate households since the child's birth and maternal grandfather never maintained physical custody of the child.  Upon appeal, this Court expressly declined to address whether the record supported these findings by the trial court, and hence, whether a new family unit was being created, because this Court felt it necessary first to "confront whether prevailing Pennsylvania law permits Maternal Grandfather to formally step into the void Father created."  *J.M.*, 991 A.2d at 325-26.  Citing our Supreme Court's decision in *R.B.F.*, which permitted petitioners in two cases to show cause why adoption should proceed by their unmarried same-sex partners without termination of the rights of the respective natural parents, this Court summarily concluded it believed the same principles should apply in *J.M.*  Accordingly, in *J.M* we ordered a remand to permit the petitioners to show cause under Section 2901 of the Act as to why the proposed adoption should proceed.

Although we allowed an opportunity to show cause in *J.M.*, the issue of whether cause was shown, or whether the maternal grandfather in that

---

[6] Prior to *J.M.*, this Court unequivocally held that a maternal grandmother could not adopt the child of her daughter while her daughter retained parental rights to the child.  *In re Adoption of K.M.W.*, 718 A.2d 332 (Pa. Super. 1998).  The Act does not permit a non-spouse to adopt a child where both parents have not relinquished parental rights.  *Id.*

case could qualify as an adoptive resource with his daughter was never expressly decided by this Court. To the extent this Court and the trial court rely upon *J.M.* to summarily conclude Maternal Grandfather here qualifies as an adoptive resource, that reliance is misplaced. This Court proceeded only so far as to remand the case to the trial court for a preliminary determination under Section 2901 to determine if cause could be shown whether maternal grandfather could step into the void created by father for the adoption to proceed. *J.M.*, 991 A.2d at 326-27.

Alternatively, to the extent *J.M.* may be read to support the proposition a maternal grandfather may adopt and co-parent a child that is the biological child of his daughter, I believe *J.M.* was wrongly decided. *J.M.* relied upon *R.B.F.*, which permitted petitioners in two separate cases an opportunity to demonstrate, by clear and convincing evidence, cause as to whether the purpose of Section 2711(d)'s relinquishment of parental rights (a prerequisite to adoption) would be otherwise fulfilled or unnecessary when adoption was proposed by a same-sex partner.

The first case in *R.B.F.* concerned a petition by a proposed adoptive father and his domestic partner to allow the domestic partner to adopt father's children. In the second case, the biological mother and her same-sex domestic partner filed a petition to permit the domestic partner to adopt mother's child who had been conceived by in vitro fertilization with the sperm of an anonymous donor. In both cases, the children only had one legal parent. These cases did not concern involuntary termination petitions.

In reversing this Court, our Supreme Court in **R.B.F.** noted that we correctly held that a legal parent had to relinquish parental rights prior to adoption by a non-spouse and that a same–sex partner could not attain the benefits of the spousal exception under Section 2903, because Pennsylvania at the time recognized only marriages between one man and one woman. The Supreme Court noted, however, that the Legislature in 1982 amended Section 2901 of the Act to provide a court discretion to consider "cause shown" by a petitioner as to why, in a particular case, he or she cannot meet statutory requirements under the Act.

As to the meaning of "cause," the Supreme Court agreed that a demonstration of "cause" permits a petitioner to show why in a particular case he or she cannot meet statutory requirements. **Id.** at 1201-02. Upon a showing of cause, a court is afforded discretion to determine if the adoption should, nevertheless, be granted. Borrowing from this Court's decision in **In re Long**, 745 A.2d 673 (Pa. Super. 2000), the Court cited with approval our interpretation of "cause shown" to require clear and convincing evidence that the exception sought (need for adoption information) clearly outweighed the considerations behind the statute. **R.B.F.**, 803 A.2d at 1203. The Court cautioned, however, that it was not opening the "door to unlimited adoptions by legally unrelated adults," and that it was not creating a judicial exception to the requirements of the Act. **Id.** at 1202. Rather, it was employing the plain meaning of the terms used by the Legislature. The Court noted the Act does not expressly preclude

unmarried same-sex partners from adopting a child who has no legal parents. The Court, therefore, vacated our orders and remanded to the trial courts "*for evidentiary hearings to determine whether [a]ppellants can demonstrate by clear and convincing evidence, cause as to whether the **purpose** of Section 2711(d)'s relinquishment of parental rights requirement **will be otherwise fulfilled or is unnecessary** under the particular facts of each case*." ***Id.*** at 1203 (bolded emphasis added).

The remands in ***R.B.F.*** permitted the same-sex couples an opportunity to show cause why the purpose of Section 2711(d)'s relinquishment of parental rights was fulfilled or unnecessary so that the proposed adoptions could proceed. Although the outcome of those remand proceedings is not of record*,* it would seem that "cause" could be shown to excuse the requirement of relinquishment of parental rights under Section 2711(d), because there were no other legal parents from whom consent had to be acquired. Demonstrating relinquishment under Section 2711(d) would therefore be unnecessary. The same-sex couples in ***R.B.F.*** had been in long-term, intimate relationships, but those relationships were insufficient to confer upon them the benefits of Section 2903, which applies only to stepparents, *i.e.*, spouses of the natural/adoptive parents. Under these circumstances, it also would appear the essential purpose for claiming the exemption for spousal adoption under Section 2903 could be fulfilled where the individuals concerned were in relationships like spouses that comport with the spirit—but not the letter—of Section 2903.

*J.M.* and the instant case present situations wholly different from the considerations at issue in *R.B.F.* Here, as in *J.M.*, at least two statutory steps must be satisfied before Maternal Grandfather can be allowed to adopt and co-parent Children with Mother. First, involuntary termination of the other natural parent's (Father) rights must be granted. Second, the involuntary termination petition must set forth a qualified person to adopt Children if termination is approved. As to the first statutory requirement, unlike in *R.B.F.*, where consent was unnecessary because of the absence of another legal parent, Children here and in *J.M.* have a natural parent whose rights first must be involuntarily terminated before adoption can be allowed to proceed. Therefore, although consent in *R.B.F.* might have been waived for cause given the voluntary nature of the proceeding and the absence of another legal parent, here the purpose and necessity for termination cannot be waived due to the presence of another natural parent and the involuntary nature of the petition.

As for the second statutory requirement, as stated, in Pennsylvania a petition to terminate a parent's rights involuntarily when filed by one parent against another is cognizable only when it is accompanied by a prospective stepparent's intention to adopt the child. *See L.J.B.*, 18 A.3d at 1107 (citing 23 Pa. C.S. § 2512(b)). Parents may only consent to adoption of their child and retain parental rights when a person that is their spouse, *i.e.*, the stepparent to the child, adopts the child. *See* 23 Pa. C.S. § 2903.

I do not believe the necessity and purpose for this statutory requirement can be dispensed with for "cause" where the proposed "spouse" is the mother's father. Unlike the situation in *R.B.F.*, where the same-sex partner might demonstrate cause on the basis he or she is the equivalent of a spouse under Section 2903, a similar argument cannot be made here, or in *J.M.* There is strong public policy against an arrangement whereby a woman's father can be considered the equivalent of a spouse under Section 2903. Although not entirely the same, it is hard to envision that the Legislature intended to permit fathers and their daughters to co-parent when the Marriage Law expressly prohibits a man from marrying his daughter and a woman from marrying her father. 23 Pa.C.S. § 1304. Indeed, I do not believe the Legislature intended such results when it enacted the cause provision under Section 2901 of the Act. It is one thing to argue and prove by clear and convincing evidence the equivalent of or lack of necessity for a statutory provision where the parties can comply with the purpose of the Act, but not the letter. *See R.B.F.*, 803 A.2d at 1203 (remanding for evidentiary hearings to determine whether the appellants, same sex couples who, at the time, were not permitted to marry in Pennsylvania, "can demonstrate by clear and convincing evidence, cause as to whether the **purpose** of Section 2711(d)'s relinquishment of parental rights requirement **will be otherwise fulfilled or is unnecessary** under the particular facts of each case") (emphasis added). It is quite another thing to eradicate a statutory provision under the guise of cause where both the purpose and the

letter of the statute are ignored and the exception allowed to swallow the rule. *See id.* at 1202 (stating that the decision "does not open the door to unlimited adoptions by legally unrelated adults"); *L.J.B.*, 18 A.3d at 1108 (stating that the purpose of an adoption is to "protect[] the integrity and stability of the new family unit"). Although the discretion given to courts under Section 2901 is useful to permit an acceptable substitute for a legislative requirement, this discretion is not so broad as to permit a court to rewrite a statute and entirely upend and redefine the basic purpose of the Act as envisioned by the Legislature.

Permitting a mother's father to adopt mother's child and co-parent with mother has the very real potential to create unintended and undesirable consequences that do not promote a new family unit. Instead, such an arrangement may be very confusing and would not foster a new family unit. To illustrate, a child's grandfather or grandmother would become the child's stepfather or stepmother. Similarly, the child's father or mother may become the child's stepbrother or stepsister. Should the natural mother or father choose to remarry, nothing in the Act compels the grandparent, now parent, to terminate their parental rights in favor of mother's new spouse. Upon remarriage, the child's parents would not be his or her mother and her spouse, but rather, the child's parents could remain as his or her mother and mother's father, with the mother's new spouse unable to bond with the child in a new family unit. If the grandparent is allowed to remain as an adoptive

parent when mother remarries, a family unit would be created whereby the married spouses would not both be parents to the child or children.

It is apparent from Maternal Grandfather's uncontradicted testimony that none of the above practical ramifications were considered when Mother and Maternal Grandfather decided to file their petition to terminate Father's parental rights to Children. Even though Maternal Grandfather expressed his desire to see his daughter settle down at some point in another relationship, he had not thought about how that would affect his role with Children if he were allowed to adopt them at this time. N.T, 8/13/13, at 23-26. Certainly, we cannot countenance a construction of the Act whereby its application would cause tremendous uncertainty in a child's life as to who are his or her parents. Conflict is inherent in an arrangement where a grandparent with parental rights may choose to parent differently than the married couple with whom the child presumably would be living. We do not believe the Legislature intended for such confusing results to occur when it enacted the cause provision under Section 2901 of the Act. Accordingly, I would conclude that Mother's Section 2512 involuntary petition that identified her father as an adoptive resource, fails to meet the initial threshold requirement of setting forth a qualified adoptive parent for Children under Section 2512 of the Act.

The second principal basis upon which I disagree with the Majority is the conclusion that the arrangement proposed by Mother would constitute a new parent-child relationship and a new family unit. As explained above, a

biological parent is permitted only to avail him or herself of the benefits of the involuntary termination provisions of the Act when the proposed termination of the other biological parent's rights would lead to a child's adoption by an individual with whom the child shares a parent-child relationship and the adoption fosters a new family unit for the child.

Conspicuously absent from the trial court's decision is a determination that Maternal Grandfather's adoption of Children would create a new family unit. My review of the record and the findings made by the trial court reveal no support for such a finding. The trial court found (and it is undisputed by the parties) that Maternal Grandfather is married to Maternal Grandmother. Maternal Grandmother did not testify at the termination hearing, and neither Mother nor Father provided any evidence regarding her relationship with Children or her position with respect to the proposed adoption. Although I cannot speculate about what a record might reveal as to Maternal Grandmother's relationship with Children, the absence of any consideration of this relationship, given the intact marriage between the maternal grandparents, is disconcerting. I would expect, given the arrangement proposed (Maternal Grandfather as parent to their daughter's children and remaining as spouse to Maternal Grandmother), the impact of a party's other household members would be a part of the determination of whether cause has been shown to permit the proposed adoption to proceed forward.

Here, the record also reflects that Maternal Grandfather resides with Maternal Grandmother, while Mother lives alone with Children. There is

nothing in the record to suggest that Maternal Grandfather and Mother plan to cohabitate. Although the lack of cohabitation may not necessarily prohibit a finding of the creation of a new family unit, it is an important factor to consider. *See, e.g., J.D.S.*, 763 A.2d at 872 ("No gain to the child or society is achieved by permitting the termination of the natural father's parental rights in order to permit adoption by a stepfather who no longer resides with the child's mother.").

The Majority misstates our holding in *J.M.* when it states that this Court in *J.M.* expressly rejected the notion that cohabitation was a necessary component of a "new family" unit. The trial court in *J.M.* found that adoption by the maternal grandfather would not create a new family unit given that mother and maternal grandfather maintained separate households since the child's birth and maternal grandfather never maintained physical custody of child. This Court expressly declined to address whether the record supported these findings by the trial court, and hence, whether a new family unit was being created, because this Court felt it necessary first to "confront whether prevailing Pennsylvania law permits Maternal Grandfather to formally step into the void Father created." *J.M.*, 991 A.2d at 325-26. Citing our Supreme Court's decision in *R.B.F.*, 803 A.2d at 1199, this Court summarily concluded it believed the same principles should apply in *J.M.* Accordingly, in *J.M* we ordered a remand to permit the petitioners to show cause under Section 2901 of the Act as to why the proposed adoption should proceed. Although we allowed the opportunity to

show cause in ***J.M.***, the issue of whether cause was shown, or whether cohabitation was a necessary component to a new family unit, were **never resolved** by this Court. Furthermore, there is no need now to address whether "cohabitation" is *per se* an indispensable element to a "family unit" analysis in light of the totality of facts in this case. Specifically, it is the lack of cohabitation, or any intent to do so, between Mother and Maternal Grandfather **and** Maternal Grandfather's intact marriage to and separate residence with Maternal Grandmother that leads to the conclusion that no new family unit will be created by the proposed adoption in this case.

I find support for concluding that no new family unit will be created under Mother's involuntary petition in the related area of custody. When awarding custody, the trial court always must consider the impact of other household members before an award of even partial custody may be made. ***See*** 23 Pa.C.S. § 5328(a). It is unreasonable to conclude that a trial court must employ a higher level of scrutiny of a person's household in deciding whether to grant the party partial custody of a child than it would when deciding whether to permit the party to adopt a child. Additionally, in the context of grandparental standing under 23 Pa.C.S. § 5324(2) to sue for custody, we have held that, to satisfy *in loco parentis*, a grandparent must reside with the children and/or their parents and assume full parental responsibility. ***See D.G. v. D.B.***, 91 A.3d 706 (Pa. Super. 2014) (Noting that the grandmother's "efforts to assist [m]other and E.B. in leaving her home are strongly inconsistent with an assumption of full parental

responsibility [. . . and t]he periods of co-residence are more consistent with [g]randmother assisting [m]other and E.B. in a time of need than with [g]randmother's informal adoption of E.B.").

Continuing, I fail to see how Maternal Grandfather's adoption of Children would create a new family unit, as they already are members of the same family. Unlike cases of stepparent adoptions or unmarried partner adoptions, wherein the prospective adoptive parent shares no legal relationship with the child, Maternal Grandfather is Children's blood relative. He is their mother's father.

Contrary to the Majority's conclusion, I also find that Mother's and Maternal Grandfather's reason for filing their involuntary termination and adoption petition does not comport with the purpose of the Act not to use a termination to punish an ineffective or negligent parent. *See L.J.B.*, 18 A.3d at 1108. Here, relying upon Maternal Grandfather's testimony, the trial court found that the principal purpose for the filing of the involuntary termination and adoption petition was to respond to Father seeking custody of Children after a long period of parental non-involvement. Maternal Grandfather testified that he had previously contemplated adopting Children, but did not proceed because he "didn't see a need." N.T., 8/13/13, at 26-27. The "need" only arose once Father filed a petition for custody of Children, which, according to Maternal Grandfather, "threatened [to turn

Children's worlds] upside down." *Id.* at 27.[7] Using an involuntary termination petition as a defensive mechanism against a parent seeking custody of his or her children further does not comport with the purposes of the Act. *L.J.B.*, *supra*; *B.E.*, *supra*. Accordingly, I am compelled to hold that the trial court abused its discretion and erred as a matter of law by concluding cause was demonstrated to permit the adoption of Children by Maternal Grandfather as no new parent-child relationship or family unit would be created as proposed under Mother's involuntary termination petition.[8]

Lastly, I find the Majority's reference to Section 2312 of the Act to be unconvincing. Section 2312 provides the general statement that "[a]ny individual may become an adopting parent." 23 Pa.C.S. § 2312. The Majority interprets this provision as all-encompassing, so as to eradicate all other statutory requirements, in particular, the more specific statutory requirements for adoption under the Act, including the spousal requirement under Section 2903. All provisions of the Act, however, must be read *in pari*

---

[7] The Majority states that the Orphans' court made clear it understood Mother's and Maternal Grandfather's objective in filing their termination petition was to protect Children. Maj. Op. at 25. The trial court nowhere in its opinions made this finding or any such statement.

[8] I would not take issue with the trial court's findings under Section 2511(a)(1) and (b) if the question of involuntary termination could be reached by the trial court. Because the trial court erred in finding cause on the threshold question of whether the involuntary petition proposed a termination and adoption to create a new parent-child relationship and family unit, any consideration of Section 2511(a)(1) and (b) was premature.

*materia*. ***See*** 1 Pa. C.S. § 1932(a), (b) ("[S]tatutes are in pari materia when they relate to the same . . . things. . . . [and] shall be construed together, if possible, as one statute."). The Statutory Construction Act also makes clear that, to the extent two statutory provisions are in conflict and cannot be construed to give effect to both, the more specific provision will control. ***See*** 1 Pa.C.S. § 1933. As between Sections 2312 and 2903, there can be no doubt Section 2903 is the more specific provision. Nonetheless, in the same breath the Majority acknowledges the "any individual" language under Section 2312 is subject to "good cause shown" under Section 2901 of the Act, thereby contradicting the all-encompassing attribute the Majority seeks to ascribe to Section 2312 for purposes of this matter.

In closing, I emphasize I do not intend to minimize in any manner the substantial contributions and support provided by Maternal Grandfather to his daughter and to his grandchildren. Maternal Grandfather indeed has offered the type of emotional and financial support much needed and often times typical of extended family, especially when one finds a child in need or not fully prepared to address the challenges of having to parent children alone. Despite how I would decide this matter, I also am fully cognizant of the custody rights possessed by Maternal Grandfather under the Custody Act[9] with respect to his grandchildren. Although termination of parental rights and adoption of Children cannot be sanctioned as proposed in this case, the trial court nonetheless has significant authority and discretion

---

[9] Act of November 23, 2010, P.L. 1106, 23 Pa.C.S. §§ 5321-5340.

under the Custody Act to enter appropriate custody orders *vis-à-vis* Father and/or Maternal Grandfather in Children's best interests. This Court, however, does not have the authority to redefine and rewrite the many provisions of the Adoption Act that would be required to grant the termination and adoption sought in this case. Understandably, I reject the Majority's criticism that an outcome here contrary to the one reached by the Majority is the product of a rigid mindset that ignores evolving societal norms. It is not the role of this Court to establish societal norms. Barring a change in the law by our Legislature or an express reinterpretation of existing statutes by our Supreme Court, I would be constrained to reverse, based on an abuse of discretion, the trial court's decree terminating Father's parental rights and approving the adoption of Children by Maternal Grandfather.

For all of the foregoing reasons, I respectfully dissent.

Judge Donohue and Judge Shogan join this dissenting opinion.