J-S57001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: S.M.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.A.R. & S.O.-R. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 79 EDA 2018 |

Appeal from the Order Entered November 27, 2017
In the Court of Common Pleas of Chester County
Orphans' Court at No(s): AD-17-0062

BEFORE:   PANELLA, J., PLATT*, J., and STRASSBURGER*, J.

MEMORANDUM BY PANELLA, J:                    **FILED MARCH 04, 2019**

R.A.R. and S.O.-R. ("Foster Parents") appeal from the order entered November 27, 2017 in the Court of Common Pleas of Chester County, denying their revised petition for adoption. Foster Parents were in the process of adopting S.M.M., a special needs child in their care, when S.M.M. tragically died from complications of his longstanding illnesses. Foster Parents nevertheless wish to continue with the adoption as planned, to memorialize S.M.M. as a member of their family. After careful review, we reverse.

The record reveals the following factual history. S.M.M., a male, was born in Arizona in August 2013. S.M.M. was diagnosed with Down syndrome, chronic lung disease, subglottic stenosis, Hirschsprung's disease, and severe visual and hearing deficits. His biological parents could not appropriately care

_____

* Retired Senior Judge assigned to the Superior Court.

for S.M.M.'s health issues and agreed to voluntarily relinquish their parental rights. The Superior Court of Arizona, Maricopa County, then issued an order terminating their parental rights to S.M.M.

Foster Parents are the natural or adoptive parents of ten children. Several of their adopted children have special needs. Two of the children have conditions that require 20 hours per day of in-home nursing care. In March of 2017, S.M.M.'s biological parents placed him with Foster Parents. He was three and a half years old, weighed 21 pounds, and could not stand or even hold his head up. He was still in an infant car seat.

A subsequent post-placement report, performed in June 2017, observed that S.M.M. was doing very well in Foster Parents' home. The report noted that S.M.M. sat unassisted, rolled over, army-crawled, pulled himself up to his knees, and could say "Ma Ma."

On September 7, 2017, Foster Parents filed a petition to adopt S.M.M. The court scheduled a hearing on the petition to adopt for September 25, 2017. Tragically, S.M.M. died prior to the hearing due to the long-term sequelae of Down syndrome. Notwithstanding S.M.M.'s death, the court conducted the hearing on the petition to adopt on September 25, 2017, and Foster Parents both testified. Foster Parents also presented the testimony of Kate Adams, who performed an adoption home study and drafted post-placement reports that strongly supported the adoption.

R.A.R. explained the family's desire to adopt S.M.M., even after his death, as follows:

[R.A.R.]: It's -- I mean, he deserves a family. I would love for him to have the name of the family, a family that loved him and cared about him for the five and a half months that he was with us.

N.T., 9/25/17, at 10.

Counsel argued the court should permit the adoption, in part, as follows:

In addition, your Honor, these folks do not stand to benefit financially or in any other way from adopting this child, and, in fact, by being permitted to adopt this child, this child then gains parents. ...  He has no parents. The termination of rights has occurred in Maricopa County, and here this child was just waiting for the D Day, today.

*Id*., at 13.

Ms. Adams also testified, recommending that the family be permitted to adopt S.M.M. *See id*. Following the hearing, the orphans' court permitted Foster Parents to file an amended petition for adoption. However the orphans' court denied Foster Parents' amended petition. Foster Parents filed a timely notice of appeal, and complied with Pa.R.A.P. 1925(b).

On appeal, Foster Parents raise the following issues:

1.     Whether the Adoption Act, more specifically, 23 Pa.C.S.[A. §] 2901, provides for the adoption of S.M.M., when [R.A.R. and S.O.-R.] met all requirements of the law prior to the adoption finalization hearing?

2.     Whether the theory of equitable adoption provides for the adoption of a deceased child, when the natural mother of S.M.M. relinquished her rights and placed S.M.M. in the care of [R.A.R. and S.O.-R.], with the understanding that the [R.A.R. and S.O.-R.] would ultimately adopt S.M.M.?

R.A.R. and S.O.-R.'s Brief, at 4.

As Foster Parents' issues involve a question of law, our scope of review is plenary. *See In re Adoption of R.B.F.*, 803 A.2d 1195, 1199 n.6 (Pa. 2002). Our review must be "focused entirely on the relevant statutory provisions" of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2910. *Id.* at 1199. This Court has declared,

> To effect an adoption the provisions of the Adoption Act must be strictly construed. Additionally, adoption is purely a statutory right, unknown at common law. Our Courts cannot and should not create judicial exceptions where the legislature has not seen fit to create such exceptions.

*In re Adoption of K.M.W.*, 718 A.2d 332, 333 (Pa. Super. 1998).

Section 2901 of the Adoption Act provides, in pertinent part, as follows:

> Unless the court for cause shown determines otherwise, no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated, the investigation required by section 2535 (relating to investigation) has been completed, the report of the intermediary has been filed pursuant to section 2533 (relating to report of intermediary) and all other legal requirements have been met. If all legal requirements have been met, the court may enter a decree of adoption at any time.

23 Pa.C.S.A. § 2901.

We have observed, "[t]he judicial discretion provided by this section cannot be exercised unless and until the statutory requirements leading up to the adoption have been met and, until that time, the best interest and general welfare of the child cannot be considered." *In re Adoption of J.D.S.*, 763 A.2d 867, 861 (Pa. Super. 2000) (citation omitted).

J-S57001-18

Here, the orphans' court order denying the revised petition for adoption

stated:

[Foster Parents] filed their original petition for adoption on September 7, 2017. They sought to adopt the child known as S.M.M. for whom they had been caring. Sadly, S.M.M. died two (2) weeks before the hearing on the petition for adoption. [Foster Parents] nonetheless wish to continue with the adoption proceedings and have asked the court to approve their adoption of the now-deceased child. Although the court appreciates [their] desire to be recognized as S.M.M.'s parents, as they concede, adoption is not founded in common law, but in a statute known as the Adoption Act, 23 Pa.C.S.[A.] §2101, *et. seq.* The Adoption Act, however, does not provide for the type of adoption sought here and [they] have been unable to provide the court with any persuasive authority which would allow the court to act upon their request.

Orphans' Court Final Decree, filed 11/27/17, at 1.

Further, at the hearing on the petition, the following discussion

occurred:

THE COURT: You may be seated. So as I was saying earlier today, adoptions are the thing I love to do the most. They are the most fun.

\*\*\*

THE COURT: And so it's with a broken heart that we are here on what would otherwise be a joyous day. So, [Foster Parents' counsel], if you don't mind, what I thought I would do is address the parents.

\*\*\*

THE COURT: So, [Foster Parents' counsel] sent me a letter -- you probably got a copy of it -- and we marked it all up. Between my law clerk, who is brilliant, and me, we spent some time last week looking at the possibilities as to what the law might allow us to do. And, although [Foster Parents' counsel] made [a] heroic effort, I have come out the other end of the tube, and I just don't think I

- 5 -

have the legal authority to grant what you are now asking. If I did, I would, but I don't. I have given [Foster Parents' counsel] some of my legal opinions, and talked about what perhaps could happen if you would take an appeal. But at my level, I am a trial judge, and this would make new law, and that's not up to me. That's up to smarter people.

So I just wanted you to know that I feel for you, and if there was any way I thought I could grant what you are asking, I would do so.

N.T., Hearing, 9/25/17, at 3-4.

We first address Foster Parents' equitable arguments. Foster Parents contend they "equitably adopted" S.M.M., and that to prevent an adoption here is contrary to the spirit of the Adoption Act. They contend this Court should recognize that they equitably adopted S.M.M. through their acts of caring and nurturing him "as if he were their own flesh and blood." Appellants' Brief at 15. Similarly, they argue that permitting their adoption of S.M.M. comports with the expectations and wishes of the citizens of the Commonwealth, and that to prevent the adoption is contrary to the spirit of the law. *Id.* at 13.

Our Supreme Court has observed that the right to adopt is purely statutory. *See In re Adoption of R.B.F.*, 803 A.2d 1195, 1199 (Pa. 2002). It has no basis in common law. *See id*. To the extent that the Adoption Act precludes the adoption, we cannot expand upon it to allow an adoption where the Adoption Act does not permit it. *See id*. ("To effect an adoption, the legislative provisions of the Adoption Act must be strictly complied with.")

Thus, there can be no "equitable adoption" outside the provisions of the Act. The court properly recognized that it had no power to deem S.M.M. already adopted as a matter of equity. Foster Parents' equitable arguments do not establish a ground for relief on appeal.

In the alternative, Foster Parents argue that the Act permits their posthumous adoption of S.M.M., asserting, "[i]f all legal requirements have been met, the court may enter a decree of adoption at any time." 23 Pa.C.S.A. § 2901. Foster Parents argue that because all legal requirements – the termination of the birth parents' parental rights, the report of intention to adopt, and the home study report – were completed, the court retained the ability to enter the decree of adoption "at any time." Appellant's Brief, at 13*.*

The court does not identify what legal requirement Foster Parents failed to establish under the Act. However, it is not necessary to engage in a protracted analysis of the legal requirements under the Act, as we conclude the Act provides courts a significant amount of discretion in waiving any legal requirement.

We acknowledge the statute does not *require* the court to allow the adoption. We note that several states do explicitly permit posthumous adoptions. For instance, both Arkansas and Utah, by statute, provide that, if a child dies after the child is placed with a prospective "adoptive parent or parents for the purpose of adoption, the court has authority to enter a final decree of adoption after the child's death." *See* Ark. Code § 9-9-205, Utah Code § 78B-6-136.5 (1953) (amended 2012).

In contrast, we acknowledge the Act does not contain any explicit provision for posthumous adoption. However, the plain language of the Act provides for the waiver of any legal requirement upon a finding of good cause for the waiver.

Section 2901's list of legal requirements for adoption begins with the phrase, "Unless the court for cause shown determines otherwise[.]" The Supreme Court of Pennsylvania has observed that "there is no reasonable construction of the Section 2901 'cause shown' language other than to conclude it permits a petitioner to demonstrate why, in a particular case, he or she cannot meet the statutory requirements." *R.B.F.*, 803 A.2d at 1201-1202. Thus, the trial court is granted discretion to determine whether a petitioner has shown sufficient cause to be excused from establishing any legal requirement. *See id*.

Here, the trial court's rationale does not explicitly acknowledge *R.B.F.* or explicitly discuss the issue of cause shown under section 2901. However, the court's on the record statement that it would grant the adoption if it concluded it had the legal authority to do so, *see* N.T., Hearing, 9/25/17, at 3-4, provides a clear indication of the court's position on the issue. We therefore reverse the order.

Order reversed. Jurisdiction relinquished.

Judge Platt did not participate in the consideration or decision of this case.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 3/4/2019*