**In re ADOPTION OF J.D.S., a Minor.**

**Appeal of B.S., Natural Father.**

Superior Court of Pennsylvania.

Argued Oct. 17, 2000.

Filed Nov. 29, 2000.

Robert J. Colaizzi, Pittsburgh, for appellant.

Raymond N. Sanchas, White Oak, for J.D.S., appellee.

Audrey Rasmusson, Pittsburgh, for R.D.K., appellee.

Before CAVANAUGH, EAKIN and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 B.S. (father) appeals from the March 20, 2000 final Order terminating his parental rights to his minor son, J.D.S. (the child).

¶ 2 Father and mother were married in June 1987 and, on August 28, 1989, the child was born. They divorced in February 1990 and each has remarried. Consent orders of custody, issued in 1991 and 1994, have established the custodial arrangements, with mother maintaining primary physical custody of the child and father receiving alternating weekend custody. Father has paid and continues to pay his child support obligation via wage attachments. The deterioration of the parent/child relationship appears to have begun when father was transferred in 1996 to Sharon, Pennsylvania and failed to take the measures necessary to ensure his relationship with the child was maintained.

¶ 3 On May 20, 1999, mother's current husband (D.K.) filed petitions for involuntary termination of father's parental rights and for adoption of the child. Mother signed a consent to the proposed adoption. Following an August 9, 1999 evidentiary hearing, the Orphans' Court entered its preliminary order of termination.[1] Excep-

---

**1.** Although the trial court states that the petitions for involuntary termination of father's parental rights and for adoption were filed in August 1999 and that an evidentiary hearing was held in October 1999, the certified record indicates that the petitions were filed on May 20, 1999 and that the evidentiary hearing was conducted on August 9, 1999 and is devoid of any reference to filings or hearings at the

tions were filed and, on March 20, 2000, a final Order was issued terminating father's parental rights as to the child. Father filed a timely notice of appeal.

¶ 4 Counsel for mother and D.K. filed a petition to withdraw as appellate counsel. In the petition, counsel brought to the attention of this Court the fact that mother and D.K. had separated in October 1999 and that D.K. was of the opinion that there was no chance of reconciliation and that divorce was imminent. By *Per Curiam* Order dated July 19, 2000, this Court remanded the case for a factual determination as to whether D.K.'s intention to adopt the child had changed in light of the apparent marital strife. A hearing was held on August 16, 2000 and D.K. explained the situation as follows.

> Sometimes there is a lot of anger in separation situations, what anger brings out. I don't know what the future holds. Maybe we will reconcile. Maybe we won't. There's not a definite answer.

(N.T., 8/16/00 at 19.) The Orphans' Court concluded that D.K. continues in his desire to adopt the child. Notably and despite the fact that D.K. is the petitioner in both the involuntary termination of father's parental rights and adoption proceedings, there is no evidence D.K. is a participant in this appeal. Mother and the child, via a court appointed child advocate, appear to be the only other participants in this appeal.

■ ¶ 5 Pursuant to 23 Pa.C.S.A. § 2512. **Petition for involuntary termination** (a) **Who may file,** it is clear to this Court that, at the present time, D.K. lacks the requisite standing to file a petition for involuntary termination of father's parental rights. See *T.J.B. v. E.C.*, 438 Pa.Super. 529, 652 A.2d 936 (1995). D.K. no

longer resides with the child or the child's mother and the evidence strongly suggests the marriage is over. Unlike cases where a loving and devoted stepfather seeks to adopt the stepchild living in his home, D.K., for all intents and purposes and despite his proffered devotion to the child, is merely the estranged spouse of the child's mother.

¶ 6 Father raises the following issues for our review.

A. Did the trial court commit an error of law and/or abuse of discretion in concluding that the petitioner, [mother], proved, by clear and convincing evidence, that the parental rights of the respondent, [B.S.], should be terminated pursuant to 23 Pa.C.S.A. § 2511(a)(1)? [2]

B. Did the trial court commit an error of law and/or abuse of discretion in concluding that the literal language of 23 Pa.C.S.A. § 2511(a)(1) restricted the court to a mechanical application of the six month time period to consider only those contacts between the respondent/natural father, [B.S.], and minor child for the six month period immediately preceding the filing of the petition to terminate involuntarily parental rights on May 25, 1999? [3]

C. Did the trial court commit an error of law in failing to consider pursuant to 23 Pa.C.S.A. § 2511(b) the best interest and welfare of the minor child at the time of the hearing in this matter on August 9, 1999?

D. Did the trial court fail to employ a heightened degree of scrutiny as to the motive or motives of the petitioner in seeking an involuntary termination of father's parental rights and for adoption.

times mentioned by the trial court in its August 30, 2000 Order.

2. Father's repeated references in his brief to mother as the "petitioner" in the underlying termination proceedings are incorrect. As previously discussed, D.K. is the petitioner named in both the petitions for involuntary

3. While father states that the petition for involuntary termination was filed on May 25, 1999, review of the record indicates that the petition was in fact filed on May 20, 1999.

mination of parental rights of her former spouse?

(Appellant's brief at 6.)

■ ¶ 7 "The standard of review in cases involving the termination of parental rights is limited to the determination of whether the orphans' court's decree is supported by competent evidence." *In re Julissa O.*, 746 A.2d 1137, 1139 (Pa.Super.2000). We begin by examining the relevant statute, 23 Pa.C.S.A. § 2511, **Grounds for involuntary termination,** which provides in pertinent part as follows.

> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

¶ 8 Father begins by arguing that the trial court erred in finding that termination of his parental rights was established by clear and convincing evidence.

To satisfy Section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re D.J.S.*, 737 A.2d 283, 285 (Pa.Super.1999), *quoting, In re E.D.M.*, 550 Pa. 595, 601, 708 A.2d 88, 91 (1998).

¶ 9 D.K. and mother testified with respect to father's failure to inform them of his moves from Pittsburgh to Sharon, Pennsylvania and then later to Florida. Moreover, it was undisputed that father last saw his son on Thanksgiving Day, 1996 and last spoke with his son on Easter Day, 1997. Mother testified that, since this time, father has failed to acknowledge, through either gifts or cards, holidays or the child's birthdays. (N.T. 8/9/99 at 16–17.) The evidence indicates that father's lack of contact with the child has been due, in part, to obstacles imposed by mother and D.K. Nevertheless, we find the evidence is indicative of a parent who, instead of taking affirmative action to ensure a healthy relationship with his child is maintained, passively allows surrounding circumstances to dictate what type of relationship he has with his child.

■ ¶ 10 Upon careful review of the record, we find the evidence does not satisfy the burden of proof applicable in parental termination cases involving a stepparent adoption. While the evidence could establish that father's conduct, or lack thereof, indicates "a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties", 23 Pa.C.S.A. § 2511(a)(1), this evidence becomes applicable only if the proce-

dural status of the case is such that termination is permissible.

¶ 11 Section 2903 of the Adoption Act (23 Pa.C.S.A. §§ 2101–2910), **Retention of parental status,** provides: "Whenever a parent consents to the adoption of his child by his *spouse,* the parent-child relationship between him and his child shall remain whether or not he is one of the petitioners in the adoption proceeding." *Id.* (emphasis added). This provision applies only to "stepparent" situations and has no application to those whose relationship is not a legally recognized marriage. *See In re Adoption of K.M.W.,* 718 A.2d 332, 333 (Pa.Super.1998). Absent a verifiable finding that there is an intact marital relationship between mother and stepfather, who previously had assumed an *in loco parentis* relationship to the child, mother was without a legal basis for consenting to adoption in conjunction with the stepfather's petition for adoption of the child.

¶ 12 The Adoption Act provides:

Unless the court *for cause shown* determines otherwise, no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated ... and *all other legal requirements* have been met. If all legal requirements have been met, the court may enter a decree of adoption at any time.

23 Pa.C.S.A. § 2901, **Time of entry of decree of adoption** (emphasis added). The judicial discretion provided by this section cannot be exercised unless and until the statutory requirements leading up to the adoption have been met and, until that time, the best interest and general welfare of the child cannot be considered. *In Interest of Coast,* 385 Pa.Super. 450, 561 A.2d 762 (1989), *appeal denied,* 525 Pa. 593, 575 A.2d 560 (1990).

¶ 13 Termination of the natural parent's rights prior to adoption and allowance of stepparent adoption is for the purposes of protecting the integrity and stability of the new family unit. Because the primary function of government and law is to preserve and perpetuate society, the traditional family structure is given every reasonable presumption in its favor. This comprehends an intact and subsisting family including a stepparent.

¶ 14 In remanding this case to the trial court for determination of D.K.'s intent as to the adoption, in essence the Court was directing an inquiry into the martial status of mother and D.K. to assure that the requisite statutory bases for termination of the natural father's parental rights and adoption by D.K. exist. The trial court elicited testimony that D.K., the estranged stepfather, intended to adopt the child but this fails to satisfy the requirement that the family, by implication, be intact.

¶ 15 At the August 16, 2000 hearing, D.K. testified that he lives in North Versailles (N.T., 8/16/00, at 11). Mother lives in Bradford Woods, approximately 25 miles from D.K.'s residence (*id.* at 15). The evidence establishes that while mother and D.K. have no immediate plans to divorce (*id.* at 12), they have been separated since October 1999 (*id.* at 13), prior to court approval of the petition for termination of father's rights. Significantly, the parties were separated at the time exceptions were taken to the termination Order (*id.*).[4] Counsel for mother and D.K. was not aware of the separation until June 2000 (*id.* at 14), when D.K. informed him the parties were separated, that there was no chance for reconciliation and that he would be seeking a divorce (*id.* at 19). In questioning by the court, the following exchange occurred:

---

4. The fact that mother and D.K. were aware of their marital discord while the matter of termination was pending and failed to advise the court accordingly suggests questionable motive, a lack of candor and the absence of good faith in pursuing termination of father's parental rights.

The Court: Have you made a determination as to whether or not any divorce proceeding would be filed?

D.K.: No.

The Court: You never considered it?

D.K.: At times I have, but it's never been—we're not sure. No it's not been—it's iffy. I don't know what the future holds.

The Court: But it's a possibility that divorce proceedings may be filed?

D.K.: Possible.

(*Id.* at 58.)

¶ 16 Upon review of D.K.'s testimony as a whole, it is clear there is no commitment to the marriage, an actual long-term continuing separation exists and contemplation of divorce is varying yet persistent. The facts ascertained on remand establish that while D.K. is willing to go through with the adoption, the circumstances existing at the time of the termination Order do not comply with the statutory intent that stepparent adoptions presuppose a stable marriage *and,* by inference, an intact family. While *de jure* the marriage exists, *de facto* the family is not intact and faces the possibility, if not the likelihood, of a divorce. Under these circumstances, the intent of the statute has not been met. Presently, the stepfather appears to have a continuing and caring relationship with the child, yet it is uncertain this relationship will be maintained in the face of his continued separation from the family. Should divorce occur and either of the parties remarry, the additional strain on an already extended multiple relationship would come into play.

¶ 17 The trial court was directed to determine whether D.K. continued to contemplate adoption, despite his separation from the child's mother. D.K.'s intent, however, does not overcome the requirement that the marriage be intact and functioning. No gain to the child or society is achieved by permitting the termination of the natural father's parental rights in order to permit adoption by a stepfather who no longer resides with the child's mother. The policy consideration for permitting a stepparent adoption is defeated by the separation and contemplation of divorce. Under the facts of this case, as evidenced by the testimony on the record, we find the petitioner has not met his burden of establishing the statutory prerequisite for termination of father's rights.

¶ 18 Without implementation of section 2701, **Consent to adopt,** which must be read *in pari materia* with section 2511(a)(1), we conclude termination of father's parental rights was improper. It remains for the parties to deal with the issues of partial custody, visitation and support, which are subject to proceedings in the family division which have been stayed due to the pendency of this appeal. *See* Order of February 18, 2000, Sasinoski, J. As indicated above, despite father having maintained support through wage attachment and minimal attempts to maintain a relationship with the child, his status, in the event a viable termination proceeding is pursued, is not secure. Father must be persistent in his attempts to maintain the relationship with the child, even in the face of denial and opposition by mother. Following the resolution of this appeal, it is incumbent upon father to immediately exercise his rights under the consent agreement and to proceed in the Court of Common Plea's family division to enforce his rights. To protect his status as a diligent and caring parent, father will need to document both his efforts at securing his rights and any opposition by mother.

¶ 19 By reason of our ruling in this case, we need not consider father's questions B, C and D. The Order terminating father's parental rights is hereby vacated and the petition for adoption is dismissed.

¶ 20 *Jurisdiction relinquished.*