J-A23034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.M.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.J.G. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 519 MDA 2021 |

Appeal from the Decree Entered March 31, 2021
In the Court of Common Pleas of Bradford County Orphans' Court at
No(s):  18 ADOPT 2020

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:         **FILED: FEBRUARY 14, 2022**

Appellant, M.J.G. ("Former Stepfather"), files this appeal from the

decree dated March 29, 2021,[1] in the Bradford County Court of Common Pleas,

---

[*] Former Justice specially assigned to the Superior Court.

[1] While time-stamped as March 29, 2021, the docket reflects a recorded date of March 31, 2021. There is no notation on the docket that notice was given such that the decree was entered for purposes of Pa.O.C.R. 4.6(b) (stating, "The clerk shall note in the docket the date when notice was given to the party or to his or her counsel under subparagraph (a) of this Rule."). **See** Note Pa.O.R. 4.6 (noting that the Rule is "derived from Pa.R.C.P. No. 236."); **Frazier v. City of Philadelphia**, 557 Pa. 618, 621, 735 A.2d 113, 115 (1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given"); Pa.R.A.P. 108(a) (entry of an order is designated as "the day on which the clerk makes the notation in the docket that notice of entry of the decree has been given as required by Pa.R.Civ.P. 236(b)."). Thus, the decree was not entered, and the appeal period was not triggered. Although we consider the matter on the merits, we caution the Court of Common Pleas of Bradford County as to compliance with the rules regarding the entry of orders.

dismissing his petition to adopt A.M.W. ("Child"), born in December of 2009.

Former Stepfather also appeals the decree dated March 31, 2021,[2] granting

the petition to adopt filed by E.B. ("Current Stepfather"), who is the husband

of A.G. ("Mother"), and which petition Mother joined.[3, 4] After a careful review,

we affirm.

The relevant facts and procedural history are as follows: The parties

filed competing petitions for the adoption of Child. Specifically, Former

Stepfather filed a petition for adoption on February 11, 2021, while Current

Stepfather, joined by Mother, filed a separate petition for adoption on

February 24, 2021. As to his adoption petition, Former Stepfather failed to

attach the consent of Mother and averred that it was being "unreasonably

with[eld]."  Petition for Adoption, 2/11/20, at ¶11.

Mother and Former Stepfather were in a relationship at the time of

Child's birth, and they subsequently married.  They divorced in January of

2017.  Mother and Current Stepfather married in May of 2019.  Child's

biological father has not been involved with the Child.  Former Stepfather

served as a father-figure to Child.  During the marriage, he was held out as

---

[2] While the docket reflects a recorded date of March 31, 2021, there is no notation on the docket that notice was given and that the decree was entered for purposes of Pa.O.C.R. 4.6(b). **See** n.1, **supra**.

[3] Pursuant to this decree, Child is to be known as A.M.W.-B.

[4] We note that both decrees were recorded at a single trial court docket number.

Child's father, and he and Mother discussed his adoption of Child.  He further alleged that he provided medical and dental insurance covering Child during and after the marriage.  *See* Former Stepfather's Brief in Support of Adoption Petition, 3/11/21, at Exhibits B, E, G; Petition for Adoption, 2/24/20, at Exhibit A.

Former Stepfather recounted:

I was in a monogamous relationship with [Mother] at the time of [Child]'s birth until our marriage. I was stepfather until [Mother] and I divorced on January 6, 2017.  During that time, I helped teach [Child] to walk and to talk and I was her only father figure until [Current Stepfather] came into the picture.  Her biological father was not involved whatsoever.  [Child] has always called me "dad", "daddy", or words to that effect.  I financially supported [Child] both before and after my divorce from [Mother] and I have provided health and dental insurance for most of her life, including at present.  [Mother] publically [sic] held me out as [Child]'s father.  Prior to[,] and even after our divorce, we discussed adoption and [Mother] gave me her consent to adopt[.]

Former Stepfather's Brief in Support of Adoption Petition, 3/11/21, at Exhibit G.

Moreover, a Post-Nuptial Agreement between Former Stepfather and Mother, dated September 20, 2016, included custody and support provisions. *Id.* at Exhibit C, ¶¶4, 5.  As to custody, the agreement provided, in part, "The parties shall share legal custody of [the children]. . . .The parties agree that [Former Stepfather] shall have shared physical custody of the children when

[Former Stepfather] returns from Italy."[5, 6] *Id.* at Exhibit C, ¶4. Former Stepfather claimed he exercised visitation pursuant to the agreement, as well as participated in regular video calls with Child. *Id.* at Exhibit G. Further, in June of 2020, he filed a custody petition seeking partial physical custody of Child.[7] *Id.*

On June 2, 2020, Mother and Current Stepfather filed a petition to involuntarily terminate Child's biological father's parental rights.[8] Thereafter, Former Stepfather filed a petition to intervene on July 22, 2020.[9] The trial court granted the petition to involuntarily terminate Child's biological father's parental rights on December 14, 2020. Order, 12/14/20.

As indicated *supra*, Former Stepfather and Current Stepfather, joined by Mother, then filed separate adoption petitions in February of 2021. While

---

[5] Former Stepfather and Mother additionally share a biological child who was also the subject of the post-nuptial agreement.

[6] Former Stepfather is in the United States Air Force, and he resided in Italy until July of 2018.

[7] The status of this petition is unknown.

[8] This petition noted Current Stepfather's intention to adopt Child and attached a proposed adoption petition to be filed once parental rights were terminated. Petition for Involuntary Termination of Parental Rights, 6/2/20, at ¶¶14, 15.

[9] In his petition to intervene, Former Stepfather argued he possessed an interest as he stood *in loco parentis* and had custodial rights pursuant to a post-nuptial agreement with respect to Child. He also asserted paternity by estoppel. Petition to Intervene, 7/22/20, at ¶1. By order dated October 2, 2020, a decision on this petition was deferred. Order, 10/2/20.

the parties were awaiting a hearing on the competing adoption petitions, on March 3, 2021, pursuant to an agreement, the trial court entered an order indicating that the issue of whether Former Stepfather had standing, or the ability to bring suit for adoption, would be decided on the briefs and directed the filing of same.

Subsequent to objections filed on March 10, 2021, arguing that Former Stepfather does not have standing to seek adoption due to Mother's lack of consent, and counseled briefs submitted by the parties, by decree dated March 29, 2021, the trial court dismissed Former Stepfather's petition for adoption. This decree was accompanied by a Memorandum Opinion, wherein the trial court reasoned that Former Stepfather lacked the ability to proceed with adoption.

Specifically, the trial court held:

> In this case, [Mother]'s rights are intact. She is remarried and her husband, the stepfather of [Child,] wishes to adopt[,] and [Mother] has consented to such. Given these facts, the court cannot . . . find that consent of the surviving natural mother is not required and bestow an ex-husband/stepfather the right to proceed in an adoption, even though he may have [*in loco parentis*] status.

Trial Court Memorandum Opinion, 3/29/21, at 3-4. Two days later, on March 31, 2021, following a hearing,[10] the trial court granted the adoption petition filed by Current Stepfather.

Thereafter, on April 19, 2021,[11] Former Stepfather, through counsel,[12] filed a timely notice of appeal, as well as a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).  On April 22, 2021, the trial court entered an order directing Former Stepfather file a concise statement.  Former Stepfather complied and filed an amended concise statement on May 12, 2021.[13]  On May 17, 2021, the trial court issued a Statement in Lieu of Opinion Pursuant to Pa.R.A.P. 1925.

On appeal, Former Stepfather raises the following issues for our review:

1. Whether the trial court erred and abused its discretion in dismissing [Former Stepfather]'s petition for adoption on the basis that [Former Stepfather] lacked standing[?]

2. Whether the trial court erred in granting the adoption petition of [Current Stepfather], without considering that [M]other and

---

[10] Notes of Testimony from this hearing have not been included with the certified record, and it is unknown if they have been transcribed.  Pursuant to order of April 22, 2021, the trial court denied a request by counsel for Former Stepfather for such notes.  Order, 4/22/21.

[11] While filed on April 19, 2021, the docket, as well as the time-stamp on the document, reflects a payment issue that was rectified on April 28, 2021. Regardless, Current Stepfather's appeal is timely.

[12] Former Stepfather is represented by new counsel on appeal.

[13] The issues raised in Former Stepfather's amended concise statement are substantially similar to those raised in his initial concise statement.

[Current Stepfather] were estopped from denying the legal parentage of [Former Stepfather]?

3. Whether the trial court erred in failing to rule on [Former Stepfather]'s Petition to Intervene?

4. Whether the trial court abused its discretion in failing to appoint legal counsel and/or guardian [*ad litem*] for the eleven-year-old child upon receiving two competing adoption petitions?

5. Whether the trial court erred in proceeding with the adoption hearing of [Mother and Current Stepfather] without first giving thirty (30) days for [Former Stepfather] to appeal its decision to dismiss his adoption petition[?]

6. Whether the trial court erred and abused its discretion in concluding that the child's best interest would be served by granting the adoption petition of [Current Stepfather] without all testimony necessary to inform it as to the desirability of the proposed adoption[?]

7. Whether this Honorable Court should consider quashing [Former Stepfather]'s appeal from two orders of the trial court?[14]

Former Stepfather's Brief at 4-5 (suggested answers omitted) (footnote added).[15]

"[T]he interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law." **Wilson v. Transport Ins. Co.**, 889 A.2d 563, 570 (Pa.Super. 2005). "As with all questions of law, the appellate standard of review is *de*

---

[14] Although not included in Former Stepfather's Rule 1925 Statements, this issue was raised by this Court in the Rule to Show Cause. Given our disposition that Father's appeals are proper, we do not consider this issue. **See** n.4, **supra**.

[15] While we observe that Former Stepfather states his issues differently than in his Rule 1925(b) Statements, we nevertheless find that he preserved the challenges to the trial court's decrees raised in his Statement of Questions Involved.

*novo* and the appellate scope of review is plenary." ***In re Wilson***, 879 A.2d 199, 214 (Pa.Super. 2005) (*en banc*).

Moreover, this Court reviews an adoption determination for an abuse of discretion. ***In re K.D.***, 144 A.3d 145, 151 (Pa.Super. 2016). We will not conclude there is an abuse of discretion "merely because a reviewing court would have reached a different conclusion." ***Id.*** (citation omitted). Rather, "[a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." ***Id.*** (citation omitted).

We have stated, "[i]n both custody and adoption matters, our paramount concern is the best interests of the child. This 'best interests' determination is made on a case-by-case basis, and requires the weighing of all factors which bear upon a child's physical, intellectual, moral, and spiritual well-being." ***In re Adoption of A.S.H.***, 674 A.2d 698, 700 (Pa.Super. 1996) (citations omitted). ***See*** 23 Pa.C.S.A. § 2902(a).

On appeal, Former Stepfather challenges both the order dismissing his petition, as well as the decree granting Current Stepfather's petition, which was joined by Mother. Former Stepfather first disputes the trial court's determination as to his lack of standing. Emphasizing the distinction between standing and a determination on the merits, Former Stepfather asserts that the trial court erred in not permitting his petition to be heard on the merits

since he stood *in loco parentis*, or in the place of a parent, to Child. **See** Former Stepfather's Brief at 14-15, 23-24. He indicates he has been in Child's life since her birth in a parental role and, even after his divorce from Mother, he shared legal and physical custody, paid child support, and maintained medical and dental insurance covering Child. **Id.** at 14-15, 17-18. Former Stepfather further maintains that he established good cause to dispense with the necessity for Mother's consent and proceed to a hearing on the merits as to both petitions for adoption, suggesting that Mother and Current Stepfather engaged in "gamesmanship" in filing for adoption as a result of his custody filing. **Id.** at 17-18, 23-24. Former Stepfather likewise alleges that Mother and Current Stepfather essentially sought to thwart his parental rights without grounds. **Id.** at 17-18, 24.

Former Stepfather contends there are situations where consent is not required, and it is the trial court's responsibility to establish the function of a conferred or withheld consent in an adoption proceeding. He further maintains the trial court determines best interests as it relates to adoption, and nothing precludes a court from entertaining multiple adoption petitions while determining the child's best interests.[16] **See** Former Stepfather's Brief at 19-

---

[16] Former Stepfather attempts to utilize **In the Matter of the Adoption of A.M.T. and C.C.T.**, 803 A.2d 203 (Pa.Super. 2002), **In re Adoption of R.B.F.**, 569 Pa. 269, 803 A.2d 1195 (2002), and **In re Adoption of J.E.F.**, 587 Pa. 650, 902 A.2d 402 (2006), to argue that Mother's consent is not
*(Footnote Continued Next Page)*

22. Moreover, Former Stepfather submits that, in fact, his consent was required with respect to Current Stepfather's adoption of Child as he is a parent under the Adoption Act and/or given his custodial rights to Child as Mother's consent would not be required. *Id.* at 24-27.

With regard to adoption, our Supreme Court has stated:

> We begin by recognizing that adoption is purely a statutory right, unknown at common law. *In re Adoption of E.M.A.,* 487 Pa. 152, 409 A.2d 10, 11 (1979). To effect an adoption, the legislative provisions of the Adoption Act must be strictly complied with. [*Id.*] Thus, our analysis is focused entirely on the relevant statutory provisions.
>
> The Adoption Act provides that "[a]ny individual may be adopted, regardless of his age or residence." 23 Pa.C.S.[A.] § 2311. Similarly, "[a]ny individual may become an adopting parent." [*Id.*] at § 2312. Section 2701 sets forth the requisite contents of a petition for adoption filed by a prospective adoptive parent[.]

*In re Adoption of R.B.F.*, 569 Pa. 269, 276, 803 A.2d 1195, 1199 (2002).

23 Pa.C.S.A. § 2701 states:

> A petition for adoption shall set forth:
>
> (1) The full name, residence, marital status, age, occupation, religious affiliation and racial background of the adopting parent or parents and their relationship, if any, to the adoptee.
>
> (2) That the reports under [S]ections 2530 (relating to home study and preplacement report), 2531 (relating to report of intention to adopt) and 2533 (relating to report of intermediary) have been filed, if required.

---

required. Former Stepfather's Brief at 19-22. We, however, find these cases factually distinguishable.

(3) The name and address of the intermediary, if any.

(4) The full name of the adoptee and the fact and length of time of the residence of the adoptee with the adopting parent or parents.

(5) If there is no intermediary or if no report of the intermediary has been filed or if the adoptee is over the age of 18 years, all vital statistics and other information enumerated and required to be stated of record by [S]ection 2533, so far as applicable.

(6) If a change in name of the adoptee is desired, the new name.

**(7) That all consents required by [S]ection 2711 (relating to consents necessary to adoption) are attached as exhibits or the basis upon which such consents are not required.**

(8) That it is the desire of the petitioner or the petitioners that the relationship of parent and child be established between the petitioner or petitioners and the adoptee.

(9) If no birth certificate or certification of registration of birth can be obtained, a statement of the reason therefor and an allegation of the efforts made to obtain the certificate with a request that the court establish a date and place of birth at the adoption hearing on the basis of the evidence presented.

23 Pa.C.S.A. § 2701 (emphasis added).

As to consent to an adoption, 23 Pa.C.S.A. § 2711 provides, in part:

**(a) General rule.--**Except as otherwise provided in this part, consent to an adoption shall be required of the following:

(1) The adoptee, if over 12 years of age.

(2) The spouse of the adopting parent, unless they join in the adoption petition.

**(3) The parents or surviving parent of an adoptee who has not reached the age of 18 years.**

(4) The guardian of an incapacitated person.

(5) The guardian of the person of an adoptee under the age of 18 years, if any there be, or of the person or persons having the custody of the adoptee, if any such person can be found, whenever the adoptee has no parent whose consent is required.

. . .

**(d) Contents of consent.**--

(1) The consent of a parent of an adoptee under 18 years of age shall set forth the name, age and marital status of the parent, the relationship of the consenter to the child, the name of the other parent or parents of the child and the following:

> I hereby voluntarily and unconditionally consent to the adoption of the above named child.

> I understand that by signing this consent I indicate my intent to permanently give up all rights to this child.

> I understand such child will be placed for adoption.

23 Pa.C.S.A. § 2711 (emphasis added).

Notwithstanding, pursuant to 23 Pa.C.S.A. § 2713, consents are not required as follows:

> The court, in its discretion, may dispense with consents other than that of the adoptee to a petition for adoption when:
> > (1) the adoptee is over 18 years of age; or
> > (2) the adoptee is under 18 years of age and has no parent living whose consent is required.

23 Pa.C.S.A. § 2713.

Further, 23 Pa.C.S.A. § 2714 provides:

> Consent of a parent to adoption shall not be required if a decree of termination with regard to such parent has been entered. When parental rights have not previously been terminated, the court may find that consent of a parent of the adoptee is not required

- 12 -

if, after notice and hearing as prescribed in [S]ection 2513 (relating to hearing), the court finds that grounds exist for involuntary termination under [S]ection 2511 (relating to grounds for involuntary termination).

23 Pa.C.S.A. § 2714.

As to retention of parental rights, 23 Pa.C.S.A. § 2901 states:

Unless the court for cause shown determines otherwise, no decree of adoption shall be entered unless the natural parent or parents' rights have been terminated, the investigation required by Section 2535 (relating to investigation) has been completed, the report of the intermediary has been filed pursuant to Section 2533 (relating to report of intermediary) and all other legal requirements have been met. If all legal requirements have been met, the court may enter a decree of adoption at any time.

23 Pa.C.S.A. § 2901.

However, by way of exception, 23 Pa.C.S.A. § 2903 provides:

Whenever a parent consents to the adoption of his child by his spouse, the parent-child relationship between him and his child shall remain whether or not he is one of the petitioners in the adoption proceeding.

23 Pa.C.S.A. § 2903. *See In re Adoption of R.B.F.*, 569 Pa. at 276-77, 803 A.2d at 1199-1200 (remanding for a determination of cause pursuant to Section 2901 and stating, "Thus, absent a qualifying provision appearing elsewhere in the Adoption Act, it is clear from a plain reading of these sections that a legal parent must relinquish his parental rights in order to consent to the adoption of his child by a non-spouse.").

Significantly, in *In re Adoption of J.D.S.*, 763 A.2d 867, 872 (Pa.Super. 2000), in holding the termination of a biological father's parental rights was improper, this Court considered the interplay of these statutes and

found that the proposed adoption by a stepfather who was separated from the child's mother was not valid. Examining Section 2903, this Court specifically indicated the mother could not consent to the adoption in the absence of an intact marriage. We held that "[a]bsent a verifiable finding that there is an intact marital relationship between mother and stepfather, who previously had assumed an *in loco parentis* relationship to the child, mother was without a legal basis for consenting to adoption in conjunction with the stepfather's petition for adoption of the child." *Id.* at 871.

While recognizing the discretion afforded by Section 2901, this Court acknowledged that it "cannot be exercised unless and until the statutory requirements leading up to the adoption have been met and, until that time, the best interest and general welfare of the child cannot be considered." *Id.* (citation omitted). This Court addressed the important policy of promoting an intact marriage and family unit, noting "the purposes of protecting the integrity and stability of the new family unit. Because the primary function of government and law is to preserve and perpetuate society, the traditional family structure is given every reasonable presumption in its favor. This comprehends an intact and subsisting family including a stepparent." *Id.*

In determining the proposed adoption by the stepfather was invalid in *In re Adoption of J.D.S.*, *supra*, this Court held that, regardless of the stepfather's willingness to proceed with adoption, "[the stepfather]'s intent, however, does not overcome the requirement that the marriage be intact and

- 14 -

functioning." *Id.* at 872. As such, this Court vacated the order terminating the biological father's parental rights and dismissed the stepfather's petition for adoption. *Id.*

In the case *sub judice*, notably, Mother's parental rights are intact and remain. Further, Mother, Child, and Former Stepfather are no longer part of an intact family unit. Mother and Former Stepfather have been divorced since January of 2017, three and half years at the time Former Stepfather filed his petition for adoption. As such, Mother's consent is required with respect to adoption. *See* 23 Pa.C.S.A. § 2711(a)(3); 23 Pa.C.S.A. § 2901. However, given that she and Former Stepfather are divorced, Mother cannot legally consent to his adoption of Child. *See In re Adoption of J.D.S.*, 763 A.2d at 871.

Moreover, and more importantly, Mother, Child, and Current Stepfather are part of an intact family unit. Therefore, in keeping with the statutory intent, which "presuppose[s] a stable marriage *and,* by inference, an intact family," Mother joined in the adoption petition of her current husband, Current Stepfather. *Id.* (emphasis in original). Accordingly, Former Stepfather's claim fails.

In his second issue, Former Stepfather maintains the trial court erred because Mother and Current Stepfather were estopped from denying his parentage of Child given actions recognizing such parentage. *See* Former Stepfather's Brief at 27-30. Former Stepfather explains:

Here, there is a lifelong intact relationship to protect between [Former Stepfather] and his eleven-year-old child. The pleadings filed in the instant matter are replete with examples of the prior conduct of the parties confirming [Former Stepfather]'s parentage to the child. Examples include [M]other holding [Former Stepfather] out as the father of the child, accepting child support from [Former Stepfather], accepting health and dental insurance from [Former Stepfather] for the child, and sharing legal and physical custody with [Former Stepfather], even following their divorce. [Former Stepfather] for all relevant times continued to hold himself out as parent for the entire life of the subject child and his behavior as a responsible parent has been evident for the past eleven years. The philosophy set forth by the Superior Court in [**Gebler v. Gatti**, 895 A.2d 1 (Pa.Super. 2006)] is instructive and applicable to the case at bar and [M]other should be estopped from denying the parentage that already exists between [Former Stepfather] and the child, a relationship which [M]other fostered.

*Id.* at 30.

We disagree. While Former Stepfather relies on the cases of **Gulla v. Fitzpatrick**, 596 A.2d 851(1991), and **Gebler v. Gatti**, 895 A.2d 1 (Pa.Super. 2006), these cases are distinguishable from the case *sub judice*. In those cases, this Court utilized paternity by estoppel in order to protect the children so that the children were secure in their identity of their parents.

This Court in **Gebler** highlighted:

[C]hildren should be secure in knowing who their parents are; if a person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father he has known all his life is not in fact his father.

**Gebler**, 895 A.2d at 3. Critical to this policy is the protection of an intact family unit. *Id.*

In the case *sub judice*, this policy is not applicable as it relates to Former Stepfather as he, Mother, and Child, as well as the biological child he shares with Mother, are no longer an intact family unit. Rather, Mother, Current Stepfather, and Child are part of an intact family unit. We, likewise, recognize that paternity by estoppel, which largely arises in paternity disputes related to child support actions, cannot overcome the plain language of the Adoption Act regarding the consents necessary for adoption. Thus, this claim is without merit.

In his third issue, Former Stepfather claims the trial court committed error by failing to rule on his petition to intervene. **See** Former Stepfather's Brief at 31-35. Former Stepfather asserts this omission resulted in the lack of a "full and fair opportunity to be heard, participate and present evidence regarding the dispositive factor in all adoption proceedings, namely what is in the child's best interest" and "denied the child her right to have her best interests determined upon a consideration of all relevant facts." **Id.** at 34-35 (footnote omitted).

> Pa.R.Civ.P. 2327 states:
>
> At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if
>
> (1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered; or

(2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof; or

(3) such person could have joined as an original party in the action or could have been joined therein; or

(4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

Pa.R.Civ.P. 2327.

Pa.R.Civ.P. 2328 provides:

(a) Application for leave to intervene shall be made by a petition in the form of and verified in the manner of a plaintiff's initial pleading in a civil action, setting forth the ground on which intervention is sought and a statement of the relief or the defense which the petitioner desires to demand or assert. The petitioner shall attach to the petition a copy of any pleading which the petitioner will file in the action if permitted to intervene or shall state in the petition that the petitioner adopts by reference in whole or in part certain named pleadings or parts of pleadings already filed in the action.

(b) A copy of the petition shall be served upon each party to the action.

Pa.R.Civ.P. 2328.

Further, as to the court action regarding a petition to intervene,

Pa.R.Civ.P. 2329 states:

Upon the filing of the petition and after hearing, of which due notice shall be given to all parties, the court, if the allegations of the petition have been established and are found to be sufficient, shall enter an order allowing intervention; but an application for intervention may be refused, if

(1) the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action; or

(2) the interest of the petitioner is already adequately represented; or

(3) the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties.

Pa.R.Civ.P. 2329.

Arguing that he possessed an interest related to Child, Former Stepfather filed a petition to intervene on the adoption docket on July 22, 2020, subsequent to the filing of the petition to involuntarily terminate Child's biological father's parental rights. By order of October 2, 2020, Former Stepfather's petition to intervene was deferred. Thereafter, Former Stepfather filed a petition for adoption, which the trial court dismissed by decree dated March 29, 2021.

Given our disposition concerning Former Stepfather's petition for adoption, we conclude his issue related to the petition to intervene is moot. *See In re D.A.*, 801 A.2d 614, 616 (Pa.Super. 2002) (As a general rule, "an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. . . . An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.").

Nevertheless, even if not moot, while the petition to intervene was not ruled upon after deferral, Former Stepfather, through counsel, participated and/or was represented in all aspects related to the adoption docket until his petition for adoption was dismissed. Therefore, Former Stepfather suffered no prejudice. Hence, this claim is without merit.

In his fourth issue, Former Stepfather asserts the trial court erred in failing to appoint counsel to represent Child with respect to the competing petitions for adoption at issue. *See* Former Stepfather's Brief at 35-39. While agreeing that counsel was appointed on October 2, 2020, for purposes of the petition for involuntary termination, Former Stepfather maintains that counsel was not notified of and/or a participant in the proceedings thereafter. *Id.* at 37-38. He claims this was error.

Specifically, Former Stepfather avers:

> It is manifestly unreasonable to appoint counsel for a child in an uncontested termination of parental rights hearing but fail to appoint counsel or require their participation in a contested adoption matter with competing petitions that will impact the child's parent-child relationships. This decision by the trial court left an eleven-year-old child without counsel to (1) explain what was going on and the decision the trial court had to make, (2) explain the impact the trial court's decision had on the parental rights of [Former Stepfather] and [Current Stepfather], (3) ascertain and report her wishes and preferences to the trial court, (4) object to either or both petitions for adoption, and (5) present evidence on her behalf, including any bonding evidence and the impact on the sibling relationship she has with the biological child of [Former Stepfather] and [M]other. All these manifestly unreasonable decisions by the trial court denied the child due process in a matter she had a substantial interest in. Accordingly, the child's right to counsel was violated, which was not harmless, but rather structural error and both orders must be vacated, and the matter remanded for further proceedings.

*Id.* at 38-39.

As set forth in *In re Adoption of L.B.M.*, 639 Pa. 428, 161 A.3d 172 (2017), pursuant to 23 Pa.C.S.A. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel

who discerns and advocates for the child's legal interests, defined as a child's preferred outcome. *In re Adoption of L.B.M.*, 639 Pa. at 440-42, 161 A.3d at 175, 180. *See In re Adoption of K.M.G.*, ___ Pa. ___, 240 A.3d 1218, 1223-24 (2020) ("As we have previously recognized, 'Section 2313(a) requires that the common pleas court appoint an attorney to represent the child's legal interest, *i.e.*, the child's preferred outcome,' and the failure to appoint counsel constitutes structural error in the termination proceedings.") (affirming *In re Adoption of K.M.G.*, 219 A.3d 662 (Pa.Super. 2019) (*en banc*)); 23 Pa.C.S.A. § 2313(a) ("The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents."). This Court has authority only to raise *sua sponte* the issue of whether the trial court appointed any counsel for the child, and not the authority to delve into the quality of the representation. *See In re Adoption of K.M.G.*, ___ Pa. at ___, 240 A.3d at 1223-24.

Instantly, we find this issued waived as Former Stepfather did not raise an objection to or submit any filing and/or request as to Child's lack of representation with the trial court subsequent to the termination proceedings. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); *Fillmore v. Hill*, 665 A.2d 514, 515-16 (Pa.Super. 1995) ("[I]n order to preserve an issue for appellate review, a party must make a timely and

specific objection at the appropriate stage of the proceedings before the trial court.") (citation omitted)).

Nevertheless, even if not waived, we find this issue is without merit. In accordance with 23 Pa.C.S.A. § 2313(a), the trial court appointed counsel for Child pursuant to an order of October 2, 2020, following the filing of the petition to terminate the parental rights of Child's biological father on June 2, 2020. Counsel was appointed for the purposes of the involuntary termination petition, and counsel participated on December 14, 2020, when the trial court terminated the parental rights of Child's biological father. We observe that the petition was not contested. N.T., 12/14/20, at 2-7.

While permissible, the statute does not require that counsel be appointed beyond the termination proceedings. **See** 23 Pa.C.S.A. § 2313(a) ("The court **may** appoint counsel or a guardian [*ad litem*] to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child.") (emphasis added)). Therefore, Former Stepfather's claim that the trial court was required to appoint counsel for proceedings beyond the termination matter fails.

In his fifth issue, Former Stepfather maintains the trial court erred in proceeding with the remaining petition for adoption in contravention to his right to appeal. **See** Former Stepfather's Brief at 39-41. He indicates that, despite notifying the trial court via email of his intent to appeal the order

dismissing his petition, which the trial court acknowledged, the trial court chose to continue with the hearing as to Current Stepfather's adoption of Child. *Id.* at 40-41.

Pa.R.A.P. 1701 states, in relevant part:

**(a) General rule.**--Except as otherwise prescribed by these rules, **after an appeal is taken** or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.

Pa.R.A.P. 1701(a) (emphasis added).

Further, Pa.R.A.P. 1732 provides:

**(a) Application to trial court.**--Application for a stay of an order of a trial court pending appeal, or for approval of or modification of the terms of any *supersedeas*, or for an order suspending, modifying, restoring, or granting an injunction during the pendency of an appeal, or for relief in the nature of peremptory mandamus, must ordinarily be made in the first instance to the trial court, except where a prior order under this chapter has been entered in the matter by the appellate court or a judge thereof.

Pa.R.A.P. 1732 (a) (emphasis in original).

Counsel for Former Stepfather sent an email on March 31, 2021, expressing the intention to file an appeal from the decree dated March 29, 2021, and recorded March 31, 2021, dismissing his petition for adoption. Counsel further requested the trial court consider staying the proceeding as to the remaining petition for adoption pending appeal. *See* Email, 3/31/21.

While Former Stepfather argues the trial erred in proceeding with the hearing as to Current Stepfather's adoption on March 31, 2021, and not respecting his thirty-day time-period to appeal, Former Stepfather's mere

email notification was insufficient to stay or enjoin the trial court from proceeding. Former Stepfather did not file an appeal until over two weeks later, after the trial court entered the decree granting Current Stepfather's adoption, and at no time filed any request for a stay. As Former Stepfather had not filed an appeal at the time, the trial court properly proceeded with the matter and the March 31, 2021, hearing. Therefore, Former Stepfather's claim is without merit.

Finally, in his sixth issue, Former Stepfather contends the trial court erred in proceeding without all of the necessary and relevant information to determine Child's best interests. *See* Former Stepfather's Brief at 41-45. Former Stepfather claims the trial court's failure to allow his petition to proceed and for him to be heard, and its failure to appoint legal counsel for Child, prevented the trial court from hearing all evidence necessary to determine Child's best interests. *Id.* at 42-43. In so arguing, Former Stepfather relies largely on the claims discussed *supra*. *Id.* at 42-45.

As indicated *supra*, the trial court appropriately dismissed Former Stepfather's petition for adoption. Likewise, the trial court appropriately appointed counsel for Child who participated throughout termination proceedings of the biological father's parental rights. The trial court, therefore, did not err in proceeding with the hearing on Current Stepfather's

adoption of Child without the testimony of Former Stepfather or the participation of counsel for Child.[17]  Thus, Former Stepfather's claim fails.

To the extent Former Stepfather's argument relates to a lack of a hearing on the issue of standing, this argument lacks merit.  Pursuant to an order of March 3, 2021, the trial court noted the parties' agreement for the issue of Former Stepfather's standing to be decided on briefs and directed the filing of same.  Order 3/3/21.  Further, any objection or opposition should have been raised below and is now untimely.  Thus, we find this issue is waived.  **See** Pa.R.A.P. 302(a); **Fillmore v. Hill**, 665 A.2d at 515-16.

Accordingly, for the foregoing reasons, we affirm the trial court's decrees.

Decrees affirmed.

P.J. Panella joins the memorandum.

Judge Murray files a dissenting memorandum.

---

[17] Mother and Current Stepfather suggest that counsel for Child participated in the hearing and presented Child's desire to be adopted by Current Stepfather.  Without the Notes of Testimony, this Court is unable to confirm same.  **See** n.9, 15, **supra**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 02/14/2022